KNOX, LEMMON & ANAPOLSKY, LLP
THOMAS S. KNOX (SBN 073384)
STEPHEN J. BYERS (SBN 245607)
2339 Gold Meadow Way, Suite 205
Gold River, CA 95670-6307
Telephone:  (916) 498-9911
Facsimile:  (916) 498-9991

Attorneys for Defendant/Counterclaimant
CALIFORNIA MILK PROCESSOR BOARD,
an instrumentality of the State of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOOD MARKET MERCHANDISING, INC., <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA MILK PROCESSOR BOARD, <br><br> Defendant. <br><br><br> CALIFORNIA MILK PROCESSOR BOARD, <br><br> Counterclaimant, <br><br> v. <br><br> FOOD MARKET MERCHANDISING, INC.; MAGIC STRAWS, LLC; REACH COMPANIES, LLC; and JON TOLLEFSON <br><br> Counterdefendants. | CASE NO.  2:15-cv-01083-TLN-CKD <br><br> **CALIFORNIA MILK PROCESSOR BOARD'S OPPOSITION TO MOTION TO DISMISS FILED BY FMMI, TOLLEFSON AND REACH COMPANIES, LLC** <br><br> Date: September 20, 2018 <br> Time: 2:00 p.m. <br> Courtroom: 2 |

1
**CALIFORNIA MILK PROCESSOR BOARD'S OPPOSITION TO MOTION TO DISMISS
FILED BY FMMI, TOLLEFSON AND REACH COMPANIES, LLC**

Defendant/Cross-Complainant CALIFORNIA MILK PROCESSOR BOARD, an instrumentality of the State of California ("CMPB"), submits its Opposition to the motion to dismiss filed by Plaintiff/Counterdefendant FOOD MARKET MERCHANDISING, INC. and Counterdefendants REACH COMPANIES, LLC and JON TOLLEFSON (collectively, the "FMMI Counterdefendants").

## I.   LEGAL STANDARD

"Pleadings must be construed so as to do justice."  Fed. R. Civ. P. 8(e)

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[]'…."  *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 555 (citation omitted).

## II.   LEGAL ANALYSIS

**A.   The Court should Deny the Motion to Dismiss because CMPB, by Addressing the Pleading Concerns raised by this Court in its May 31 Order, has Adequately Pled its Counterclaims.**

On May 31, the Court granted, in part and with leave to amend, motions to dismiss filed by the FMMI Counterdefendants.  *See* Docket 90.  On June 15, CMPB filed its Third Amended Answer and Counterclaims.  In preparing those revised Counterclaims, CMPB addressed the pleading defects raised by the Court in its May 31 Order.  At this point, the case has been pending for over three years and is still not at issue.  CMPB has complied with Federal Rule of Civil Procedure 8(a)(2)'s requirement that only obligates CMPB to provide "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, *supra* at 555.

Accordingly, the Court should deny the FMMI Counterdefendants' motion to dismiss because CMPB has addressed the pleading concerns raised by this Court and CMPB has otherwise complied

with all applicable pleading requirements.  The Court should allow CMPB to conduct discovery to gather the evidence necessary to prove its claims.

### III.   LEGAL ANALYSIS

**B. CMPB has Adequately Alleged its Alter Ego Theory.**

The FMMI Counterdefendants claim that CMPB has failed to properly allege an inequitable result in pleading its alter ego claims.  Docket No. 96-1, p.5:3-6:7.  This claim is without merit.  CMPB has properly alleged its alter ego theory.  As a result, the Court should deny the FMMI Counterdefendants' motion to dismiss.

In order to address the Court's concern (in its Order granting a prior motion to dismiss) that "CMPB . . . makes no argument for how Counterdefendants' corporate separateness would promote fraud or injustice" (Docket No. 90, p.16:9-11), CMPB added the following language to the TAC:

> 119.    CMPB is informed and believes, and based thereon alleges, that recognition of the corporate separateness of FMMI, REACH, MAGIC STRAWS, DCG and DIVERSIFIED FLAVOR would promote fraud or injustice because, as mentioned above, there is evidence that these entities were formed to hide corporate assets including from CMPB, creditors, etc.
>
> 120.    CMPB is informed and believes, and based thereon alleges, that recognition of the corporate separateness of FMMI, REACH, MAGIC STRAWS, DCG and DIVERSIFIED FLAVOR would promote fraud or injustice because these entities are using their corporate status to commit tortious conduct, hide money and other assets, avoid liabilities, prevent creditors from collecting their debts and conduct business in secret to avoid the pre-existing liabilities of the other Counterdefendant entities.
>
> 121.    CMPB is informed and believes, and based thereon alleges, that recognition of the  corporate separateness of FMMI, REACH, MAGIC STRAWS, DCG, and DIVERSIFIED FLAVOR would promote fraud or injustice because if FMMI transferred some or all of its remaining inventory of "got milk?" flavored drinking straws to REACH and/or MAGIC STRAWS prior to December 31, 2013, then CMPB may be precluded under the first sale doctrine from recovering trademark infringement damages for the ongoing sales of those drinking straws if the Court recognizes the corporate separateness of REACH and MAGIC STRAWS.
>
> 122.    CMPB is informed and believes, and based thereon alleges, that recognition of the corporate separateness of FMMI, REACH, MAGIC STRAWS, DCG and DIVERSIFIED FLAVOR would promote fraud or injustice because CMPB may be

> prevented from recovering additional monies owed to it by FMMI relating to the ongoing sales of the "got milk?" flavored drinking straws because FMMI has transferred some or all of its assets to REACH, MAGIC STRAWS, DCG, DIVERSIFIED FLAVOR, TOLLEFSON, and/or HENSON.
>
> 123.  CMPB is informed and believes, and based thereon alleges, that recognition of the corporate separateness of FMMI, REACH, MAGIC STRAWS, DCG and DIVERSIFIED FLAVOR would promote fraud or injustice because CMPB may be prevented from recovering additional monies owed to it by DCG and/or DIVERSIFIED FLAVOR under the parties' terminated License Agreement if, in fact, DCG and/or DIVERSIFIED FLAVOR have transferred some or all of their assets to REACH, MAGIC STRAWS, FMMI, TOLLEFSON and/or HENSON.
>
> 124.  CMPB is informed and believes, and based thereon alleges, that recognition of the corporate separateness of FMMI, REACH, MAGIC STRAWS, DCG and DIVERSIFIED FLAVOR would promote fraud or injustice because CMPB may be precluded from adequately pursuing its claims for monetary damages against those entities.

Docket No. 91, p.43:11-44:21

The aforementioned allegations address the Court's concerns that CMPB, in its Second Amended Counterclaims, failed to alleged "facts from which it appears that recognition of the corporate entity would sanction a fraud or promote injustice."

The FMMI Counterdefendants claim that the revised allegations in the TAC "merely restate with more conclusory language that the Counterdefendants' injustice is that CMPB may not be able to collect from FMMI or the other Counterdefendants."  Docket No. 96-1, p.5:19-21.  The fact that CMPB is alleging that it may be unable to collect past due royalties from FMMI if the Court does not pierce the corporate veil is not dispositive of the issue of whether CMPB has adequately pled an inequitable result.  In *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977 (E.D. Cal. 2012) the Court, in discussing the application of California's alter ego doctrine, stated that "[t]o prove injustice, the plaintiff must be more than just a creditor attempting to recover on unsatisfied debts; **it must show that a defendant's conduct amounted to bad faith**."  Accordingly, CMPB will have met its alter ego

1   pleading burden as long as it has alleged that the FMMI Counterdefendants conduct "amounted to bad

2   faith." As explained directly below, CMPB has made such allegations.

3       In the TAC, CMPB has alleged bad faith conduct on the part of the FMMI Counterdefendants.

4   For example, CMPB has made a number of specific factual allegations regarding the FMMI

5   Counterdefendants' removal of the expiration and best buy dates on the "got milk?" flavored drinking

6   straws. *See* Docket No. 91, p.37:23-38:1.  CMPB also alleges other bad faith conduct by the FMMI

7   Counterdefendants including, but not limited to, allegations regarding the FMMI Counterdefendants

8   instructing their employees to fabricate best buy and expiration dates when trying to sell the "got

9   milk?" straws to retailers. *See* Docket No. 91, p.38:1-3.  This should be considered bad faith conduct

10  for purposes of pleading the alter ego doctrine.  Furthermore, CMPB makes numerous allegations

11  regarding the inequitable results that will occur if the FMMI Counterdefendants' corporate veils are not

12  pierced. *See* Docket No. 91, p.42:8-44:21.

13      The FMMI Counterdefendants also claim that CMPB's alter ego theory is deficient because

14  CMPB has failed to "allege that the corporate counterdefendants have an ownership interest in each

15  other." Docket No. 96-1, p.6:24-25.  The Court has already disposed of this issue in its Order on the

16  FMMI Counterdefendants' prior motion to dismiss.  In that Order, the Court addressed the FMMI

17  Counterdefendants' claim that CMPB had failed to specify which Counterdefendants are alter egos of

18  which other Counterdefendants. Docket No. 90, p.11:24-13:20.  After considering the issue, the Court

19  stated that it was "not persuaded by Counterdefendants' first reasons to dismiss CMPB's alter ego

20  allegations…." Docket No. 90, p.13:19-20.  Accordingly, the Court should reject the FMMI

21  Counterdefendants' attempt to re-hash this already decided issue.

22      The FMMI Counterdefendants rely on the Ninth Circuit's statement in *S.E.C. v. Hickey*, 322

23  F.3d 1123 (9th Cir.), opinion amended on denial of reh'g sub nom. Sec. & Exch. Comm'n v. Hickey,

24  335 F.3d 834 (9th Cir. 2003) that "[o]wnership is a prerequisite to alter ego liability, and not a mere

'factor' or 'guideline.'" *Id*. at 1128.  This statement, while true, does not help the FMMI Counterdefendants because just two paragraphs earlier the Ninth Circuit makes it clear that it is making the statement regarding ownership in the context of applying California law to determine whether "a corporation is an alter ego of **an individual**." *Ibid*; quotation marks omitted. As a result, *S.E.C. v. Hickey* does not obligate CMPB to allege that the entity Counterdefendants have an ownership interest in each other.  Rather, it merely obligates CMPB to allege that Counterdefendants Paul Henson and Jon Tollefson have an ownership interest in the five entity Counterdefendants, which CMPB has done.

The FMMI Counterdefendants also cite *Calvert v. Huckins*, 875 F. Supp. 674 (E.D. Cal. 1995) in support of their claim that CMPB has failed to adequately allege its alter ego theory.  It is unclear why the FMMI Counterdefendants cite *Calvert*, a case involving a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  In *Calvert*, unlike the current motion which the Court will decide based solely on the pleadings, the Court stated that it would decide the motion based on "documentary **evidence** containing facts sufficient to support a finding of personal jurisdiction." *Id*. at 676; emphasis added.  In any event, the FMMI Counterdefendants have not moved to dismiss the TAC for lack of personal jurisdiction.

**C.  CMPB has Adequately Alleged its Claims for Trademark/Service Mark Infringement and Unfair Competition.**

The FMMI Counterdefendants claim that "CMPB's claims for trademark infringement based on the sale of genuine goods bearing a true mark fail…." Docket No. 96-1, p.7:23-24.  In order to make this claim, the FMMI Counterdefendants misrepresent the allegations in CMPB's three counts for trademark/service mark infringement and one count for unfair competition.  As described more fully below, CMPB has properly alleged that the FMMI Counterdefendants have infringed CMPB's "got milk?" trademark and has engaged in unfair competition with CMPB.

In its three claims for trademark/service mark infringement and one claim for unfair competition, CMPB properly alleges **at least four different ways** in which the FMMI Counterdefendants have violated (and continue to violate) CMPB's rights in its "got milk?" trademark.

First, CMPB alleges that the FMMI Counterdefendants have "adopted and used CMPB's 'got milk?' marks in California and in interstate commerce by using the 'got milk?' marks to sell flavored drinking straws and other products and services . . . such use is not an authorized or genuine use of the 'got milk?' marks because, among other things, the expiration and/or best buy dates on some, if not all, of the 'got milk?' flavored drinking straws have passed thus making all such goods non-genuine, unauthorized products." Docket No. 91, p.45:4-11. Then, in order to address the Court's concern (from its Order granting a prior motion to dismiss) that "CMPB never describes how consumers would be confused as to the source of the drinking straws" (Docket No. 90, p.17:12-15), CMPB added the following language to the TAC:

> <u>Consumers will likely be confused</u> as to the source of these expired "got milk?" flavored drinking straws because they will purchase the product believing that the owner of the "got milk?" trademark is the source of the straws upon seeing the "got milk?" trademark on the packaging but then consumers will subsequently be confused as to whether CMPB is, in fact, the source once the consumer becomes aware of the faded coloring of the straw packaging, the faded coloring of the flavor beads within the straws and the insipid taste of the flavor beads. Such consumers will then question whether the expired "got milk?" flavored drinking straws, in fact, originate from CMPB, the owner of the "got milk?" trademark. <u>Consumers will also likely be confused</u> as to the source of these expired "got milk?" flavored drinking straws to the extent that some of the packaging for the straws still contains the expiration and/or best buy date and the consumer realizes that an expired product is being sold. This will likely cause the consumers to question whether the expired "got milk?" flavored drinking straws, in fact, originate from CMPB, the owner of the "got milk?" trademark, thus causing a likelihood of confusion among consumers. Furthermore, Counterdefendants are using "got milk?" display cases to advertise, display, and sell products that do not bear the "got milk?" marks or that bear an unauthorized or non-genuine "got milk?" mark. <u>This will cause consumer confusion</u> because consumers will not understand why non-got milk? products are being sold in "got milk?" display cases. Furthermore, in some instances, the packaging used by Counterdefendants to sell and/or distribute the flavored drinking straws bearing the "got milk?" marks was never submitted for approval to CMPB as required by the parties' License Agreements. <u>This will likely cause confusion among consumers</u> who will naturally assume that any packaging used in association with the "got milk?" trademark

1  was approved by CMPB, the owner of the "got milk?" trademark.  This use of the "got
2  milk?" marks constitutes trademark and service mark infringement and causes likelihood of confusion, deception, and mistake.

3  Docket No. 91, p.45:11-46:9 (underline added).

4  Second, CMPB alleges that the FMMI Counterdefendants have continued to manufacture, distribute and/or sell "flavored drinking straws bearing the "got milk?" marks in violation of the First Amendment to License Agreement's provision that FMMI cease all use of the "got milk?" marks effective December 31, 2013."  Docket No. 91, p.37:12-16.  This allegation directly contradicts the FMMI Counterdefendants' claim in their moving papers that "CMPB still does not allege unauthorized manufacturing."  Docket No. 96-1, p.8:24.

Third, CMPB alleges that the FMMI Counterdefendants are "using 'got milk?' display cases to advertise, display, and sell products that do not bear the 'got milk?' marks or that bear an unauthorized or non-genuine 'got milk?' mark."  Docket No. 91, p.47:24-26.

Fourth, CMPB alleges that "in some instances, the packaging used by the FMMI Counterdefendants to sell and/or distribute the flavored drinking straws bearing the "got milk?" marks was never submitted for approval to CMPB as required by the parties' License Agreements."  Docket No. 91, p.47:28-48:3.

The FMMI Counterdefendants cite *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F. Supp. 131 (D. Colo. 1980) in support of their claim that CMPB has failed "to allege sufficient facts to support its argument that the drinking straws are not authentic."  Docket No. 96-1, p.10:21-11:10.  A close reading of *Adolph Coors* shows that it supports the conclusion that CMPB has adequately alleged

KNOX, LEMMON & ANAPOLSKY, LLP
2339 GOLD MEADOW WAY, SUITE 205, GOLD RIVER, CA 95670-6307
TELE: (916) 498-9911  FAX: (916) 498-9991

its claims for trademark/service mark infringement and unfair competition against the FMMI Counterdefendants.[1]

In *Adolph Coors*, the plaintiff sued the defendant for statutory and common law trademark infringement and unfair competition. *Id*. at 132. The parties stipulated that Coors beer is "subject to flavor deterioration if stored for lengthy periods…." They also stipulated that the "public has no way to determine the quality of Coors beer by inspection at the time of purchase and, therefore, must rely on the reputation of Coors beer for high quality." Finally, they stipulated that the distribution and sale of Coors beer by the defendant "has caused a loss of the high quality and freshness of Coors beer . . . resulting in the sale to the public of Coors beer in an unfit condition and inferior quality, all of which severely damages the good reputation of Coors beer…." *Id*. at 133. Based on these stipulations (and others), the Court issued a permanent injunction enjoining the defendant from the unauthorized distribution and sale of Coors beer. *Id*. at 137.

The defendant in *Adolph Coors* attempted to convince the Court to construe 15 U.S.C. § 1114 very narrowly. The Court rejected too narrow a construction of section 1114 and stated that "[t]he acts of defendant in this controversy **pose a threat to the quality assurance function of trademarks**." *Id*. at 135; emphasis added. The Court also stated that "defendant is engaged in **reselling a product of inferior quality**. Defendant's acts are likely to affect adversely the goodwill of Coors and cause irreparable harm and damage to Coors' reputation for high quality beer, and likely to dilute the distinctive quality of Adolph Coors Company trademarks and trade name." *Id.* at 136; emphasis added; citation omitted.

---

[1] The FMMI Counterdefendants claim that the former License Agreement between CMPB and FMMI "includes no quality control standards." Docket No. 96-1, p.11:20-21. The FMMI Counterdefendants conveniently ignore Section 2.3 of the License Agreement entitled "Quality Standards."

1   As described below, the factual scenario in *Adolph Coors* is strikingly similar to that of the
2 instant case.

3   First, the food product found inside the "got milk?" flavored drinking straws, like the beer in the
4 Coors beer cans, is "subject to flavor deterioration if stored for lengthy periods." The FMMI
5 Counterdefendants claim that the "got milk?" flavored drinking straws currently on the market were all
6 manufactured prior to December 31, 2013. This means that those straws and, more importantly, the
7 food product inside them was manufactured anywhere from November 2009 to December 2013. As a
8 result, unsuspecting consumers (mostly children) are purchasing food product that is anywhere from
9 approximately <u>five to nine years old</u>.

10   Second, like the consuming public referenced in the *Adolph Coors* case, today's consuming
11 "public has no way to determine the quality of [the "got milk?" flavored drinking straws] by inspection
12 at the time of purchase and, therefore, must rely on the reputation of [the "got milk?" trademark] for
13 high quality."

14   Third, the ongoing distribution and sale of five to nine-year old "got milk?" flavored drinking
15 straws by the FMMI Counterdefendants has "caused a loss of the high quality and freshness of [the
16 "got milk?" flavored drinking straws] . . . resulting in the sale to the public of [product bearing the
17 world-famous "got milk?" trademark] in an unfit condition and inferior quality, all of which severely
18 damages the good reputation of [the "got milk?" trademark]."

19   The FMMI Counterdefendants also cite *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,* 53
20 F.3d 1073 (9th Cir. 1995) although it does not help the FMMI Counterdefendants because, as
21 mentioned *supra*, CMPB alleges in the TAC that the FMMI Counterdefendants resold and distributed
22 **non-genuine**, **unauthorized** goods bearing the "got milk?" marks. In *Sebastian Int'l*, the plaintiff
23 attempted to use the Lanham Act to stop the defendant from reselling the plaintiff's hair care products.
24 *Id*. at 1074. The Ninth Circuit held that the "first sale" doctrine protected the defendant from liability

for merely reselling the plaintiff's products. *Id*. at 1077.  The first sale doctrine protects the trademark owner's "good will associated with the quality of its product, and the consumer gets exactly what the consumer bargains for, the genuine product of the particular producer." *Id*. at 1075.  There are numerous allegations in the TAC that take CMPB's allegations against the FMMI Counterdefendants outside the application of the "first sale" doctrine.  For example, CMPB has alleged that "the expiration and/or best buy dates for many, if not all, of Counterdefendants' remaining inventory of flavored drinking straws bearing the "got milk?" marks have passed and Counterdefendants are fully aware that such expiration and/or best buy dates have passed." Docket No. 53, p.37:15-19.  This allegation speaks to the fact that the "good will associated with the quality of the product" has likely deteriorated due to the FMMI Counterdefendants' sale of "got milk?" flavored drinking straws containing old food product.  See *Sebastian Int'l*, *supra*, at 1075.  Furthermore, in the instant case, the consumer is not getting what he or she bargained for when purchasing an old "got milk?" flavored drinking straw.  Instead of getting a fresh tasting confectionary product (i.e. what the consumer bargained for) the consumer is getting an old, stale food product.  The first sale doctrine does not protect such non-genuine use of a trademark.

**D. CMPB has Adequately Alleged its Claims for False Designation of Origin, Trademark/Service Mark Dilution, and Counterfeiting.**

The FMMI Counterdefendants claim that CMPB's claims for false designation of origin, counterfeiting, and dilution fail to state a claim.  Docket No. 96-1, p.15:3-16:20.  This claim is without merit.

The FMMI Counterdefendants' argument on these issues is the same one they advanced in regard to CMPB's first three counts for trademark/service mark infringement and fourth count for unfair competition, namely, that these claims must fail since CMPB "cannot contemporaneously meet its burden for trademark infringement." Docket No. 96-1, p.15:6-7.  As discussed *supra*, in the TAC,

KNOX, LEMMON & ANAPOLSKY, LLP
2339 GOLD MEADOW WAY, SUITE 205, GOLD RIVER, CA 95670-6307
TELE: (916) 498-9911  FAX: (916) 498-9991

CMPB alleges numerous times that the FMMI Counterdefendants made unauthorized or non-genuine uses of the "got milk?" marks.

CMPB added the following language to its TAC to address the Court's dismissal, with leave to amend, of the fifth count of false designation of origin on the grounds that "CMPB failed to allege likelihood of confusion" (Docket No. 90, p.18:6-7):

> Consumers will likely be confused as to the source of the expired "got milk?" flavored drinking straws because they will purchase the product believing that the owner of the "got milk?" trademark is the source of the straws upon seeing the "got milk?" trademark on the packaging but then consumers will subsequently be confused as to whether CMPB is, in fact, the source once the consumer becomes aware of the faded coloring of the straw packaging, the faded coloring of the flavor beads within the straws and the insipid taste of the flavor beads.  Such consumers will then question whether the expired "got milk?" flavored drinking straws, in fact, originate from CMPB, the owner of the "got milk?" trademark.  Consumers will also likely be confused as to the source of these expired "got milk?" flavored drinking straws to the extent that some of the packaging for the straws still contains the expiration and/or best buy date and the consumer realizes that an expired product is being sold.  This will likely cause the consumers to question whether the expired "got milk?" flavored drinking straws, in fact, originate from CMPB, the owner of the "got milk?" trademark, thus causing a likelihood of confusion among consumers.  Furthermore, Counterdefendants are using "got milk?" display cases to advertise, display, and sell products that do not bear the "got milk?" marks or that bear an unauthorized or non-genuine "got milk?" mark.  This will cause consumer confusion because consumers will not understand why non-got milk? products are being sold in "got milk?" display cases.  Furthermore, in some instances, the packaging used by Counterdefendants to sell and/or distribute the flavored drinking straws bearing the "got milk?" marks was never submitted for approval to CMPB as required by the parties' License Agreements.  This will likely cause confusion among consumers who will naturally assume that any packaging used in association with the "got milk?" trademark was approved by CMPB, the owner of the "got milk?" trademark.

Docket No. 91, p.52:26-53:22.

In regard to CMPB's seventh count for counterfeiting, the FMMI Counterdefendants argue that "CMPB does not sufficiently allege that [FMMI used] a non-genuine mark version of the Mark." Docket No. 96-1, p.16:11-12.  This is not true.  In its counterfeiting claim, CMPB alleges the following which includes numerous references to the FMMI Counterdefendants' use of a non-genuine mark:

Counterdefendants, without authorization from CMPB, used the "got milk?" marks in such a way as to deceive the public in that consumers will likely be confused as to the source of these expired "got milk?" flavored drinking straws because they will purchase the product believing that the owner of the "got milk?" trademark is the source of the straws upon seeing the "got milk?" trademark on the packaging but then consumers will subsequently be confused as to whether CMPB is, in fact, the source once the consumer becomes aware of the faded coloring of the straw packaging, the faded coloring of the flavor beads within the straws and the insipid taste of the flavor beads. Such consumers will then question whether the expired "got milk?" flavored drinking straws, in fact, originate from CMPB, the owner of the "got milk?" trademark. Consumers will also likely be confused as to the source of these expired "got milk?" flavored drinking straws to the extent that some of the packaging for the straws still contains the expiration and/or best buy date and the consumer realizes that an expired product is being sold. This will likely cause the consumers to question whether the expired "got milk?" flavored drinking straws, in fact, originate from CMPB, the owner of the "got milk?" trademark, thus causing a likelihood of confusion among consumers. Furthermore, Counterdefendants are using "got milk?" display cases to advertise, display, and sell products that do not bear the "got milk?" marks or that bear an unauthorized or non-genuine "got milk?" mark. This will cause consumer confusion because consumers will not understand why non-got milk? products are being sold in "got milk?" display cases. Furthermore, in some instances, the packaging used by Counterdefendants to sell and/or distribute the flavored drinking straws bearing the "got milk?" marks was never submitted for approval to CMPB as required by the parties' License Agreements. This will likely cause confusion among consumers who will naturally assume that any packaging used in association with the "got milk?" trademark was approved by CMPB, the owner of the "got milk?" trademark.

Docket No. 91, p.56:3-28.

The FMMI Counterdefendants also dispute CMPB's reliance on 15 U.S.C. § 1116 in its counterfeiting claim. In this regard, the FMMI Counterdefendants cite 15 U.S.C. § 1116(d)(1)(B) which provides that the term "counterfeit mark" "does not include any mark or designation used on or in connection with goods or services of which the manufacture[r] or producer was, **at the time of the manufacture or production in question** authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation." Emphasis added. This subdivision of 15 U.S.C. § 1116 does not help the FMMI Counterdefendants because CMPB has alleged in the TAC that the FMMI Counterdefendants have

continued to manufacture the "got milk?" flavored drinking straws after December 31, 2013 when FMMI's authorization to use the "got milk?" trademark ended.  *See* Docket No. 91, p.37:12-18.

### E. CMPB has Adequately Alleged its Claims for Contributory Trademark Infringement.

The FMMI Counterdefendants claim that CMPB's eighth count for contributory trademark/service mark infringement fails "[b]ecause CMPB's infringement claims fail."  Docket No. 96-1, p.16:22-23.  As discussed *supra*, CMPB has properly alleged that the FMMI Counterdefendants have infringed CMPB's "got milk?" trademark in at least four distinct ways.  As a result, the Court should deny the FMMI Counterdefendants' motion to dismiss CMPB's eighth count for contributory trademark/service mark infringement.

The FMMI Counterdefendants cite *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982) in support of their claim that CMPB has failed to properly allege its claims for contributory trademark/service mark infringement.  In *Inwood Labs.*, the United States Supreme Court stated that "if a manufacturer or distributor . . . continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit."  *Id*. at 854.  In its eighth count for contributory trademark/service mark infringement, CMPB has alleged, in line with *Inwood Labs.*, that the FMMI Counterdefendants "both in their own right and as alter egos of each other, intentionally induced FMMI to infringe the "got milk?" marks by supplying goods and/or services to FMMI even though Counterdefendants knew or had reason to know that FMMI was engaging in  infringement of the "got milk?" marks.  In regard to any services provided by Counterdefendants to FMMI, Counterdefendants had direct control and monitoring of the instrumentality used by FMMI to infringe the "got milk?" marks."  Docket No. 91, p.57:19-25.

Furthermore, in order to address the Court's concern (in its Order granting a prior motion to dismiss) that "CMPB does not make any allegations that Reach and Tollefson intentionally induced

FMMI to infringe" (Docket No. 90, p.20:26-27), CMPB added the following language to the TAC: "**Counterdefendants, both in their own right and as alter egos of each other, intentionally induced FMMI to infringe the "got milk?" marks** by supplying goods and/or services to FMMI even though Counterdefendants knew or had reason to know that FMMI was engaging in infringement of the "got milk?" marks."  Docket No. 91, p.57:19-23 (Emphasis added.)

### F. <u>CMPB has Adequately Pled its Fraud Claim.</u>

The FMMI Counterdefendants argue that CMPB has not sufficiently pled its fraud claim. Docket No. 96-1, p.17:8-20:8.  As discussed below, this claim is without merit.

In order to address the Court's concern (in its Order granting a prior motion to dismiss) that "CMPB failed to explain what was false about Henson's purported representation regarding FMMI's *possible* bankruptcy" (Docket No. 90, p.22:17-18), CMPB added the following revised language to the TAC:

> In or about February or March 2014, during FMMI's ongoing negotiations with CMPB regarding termination of the 2011 License Agreement, HENSON and FMMI misrepresented to CMPB the past due royalties owed by FMMI to CMPB under the 2011 License Agreement.  At that time, FMMI had not paid any royalties to CMPB under the 2011 License Agreement for approximately 1 ½ years.  During FMMI's negotiations with CMPB, FMMI and HENSON represented to CMPB that FMMI owed CMPB royalties on "got milk?" flavored drinking straw sales of approximately $350,000.00.  CMPB, in good faith, believed FMMI's and HENSON's representations regarding the amount of past due royalties FMMI owed to CMPB because, despite numerous requests, FMMI failed and refused to provide CMPB access to FMMI's books and records to verify the amount of past due royalties.  As a result, CMPB had no way of determining whether $350,000 was the accurate amount of past due royalties owed by CMPB.  CMPB has since discovered that the representations made by HENSON and FMMI were in fact false and that HENSON and FMMI made such statements in order to induce CMPB to allow FMMI to pay a seriously reduced final royalty payment pursuant to the First Amendment to License Agreement.  CMPB would not have agreed to the First Amendment to License Agreement, which provided FMMI a discounted final royalty payment, if CMPB had known at the time that HENSON's and FMMI's statements to CMPB were, in fact, false.

Docket No. 91, p.58:11-59:2.

This revised language addresses the Court's concern regarding the "possible bankruptcy" by removing that language.

### G. CMPB has Adequately Alleged its Thirteenth Count for Rescission.

The FMMI Counterdefendants argue that the rescission claim fails because the fraud claim fails. Docket No. 96-1, p.20:9-20. This claim is without merit. The Court should reject this argument because, as explained above, CMPB has now substantially revised its fraud allegations in the TAC.

### H. CMPB Requests Leave to file Amended Counterclaims should the Court Determine that the TAC is Deficient in any Respect.

Federal Rules of Civil Procedure, Rule 15(a)(2) provides that a court should "freely give leave" to a party to amend a pleading. ["[A] party may amend its pleading only with . . . the court's leave. **The court should freely give leave when justice so requires.**"] (Emphasis added.) In the Ninth Circuit, "[t]he standard for granting leave to amend is generous." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988)  CMPB requests that the Court grant it leave to file amended Counterclaims should the Court determine that CMPB has failed to adequately plead any matter in its TAC.

Dated:  September 6, 2018                          KNOX, LEMMON & ANAPOLSKY, LLP

By:  _____/Stephen J. Byers/_____

STEPHEN J. BYERS Attorney for
CALIFORNIA MILK PROCESSOR BOARD, an
instrumentality of the State of California